UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JALEEL ABDUL-ALI,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL,<br><br>　　　　Defendant. | Case No. 18-cv-03615-RMI<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 12, 15 |

Plaintiff, Jaleel Abdul-Ali, appearing *pro se*, seeks judicial review of an administrative law judge ("ALJ") decision denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council, thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 4 & 8), and both parties have moved for summary judgment (dkts. 12 & 15). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

On August 4, 2014, Plaintiff filed applications for disability insurance benefits under Title II, and for supplemental security income under Title XVI, alleging an onset date of October 2, 2007 as to both applications. *See Administrative Record "AR"* (dkt. 11) at 23. The ALJ denied the application on April 18, 2017. *Id.* at 23. The Appeals Council denied Plaintiff's request for review on April 27, 2018. *Id.* at 1-7.

## SUMMARY OF THE RELEVANT EVIDENCE

*Introduction:*

Initially, it should be noted that while Plaintiff was represented by an attorney when appearing before the ALJ, he is proceeding *pro se* in this court. Plaintiff submits in pertinent part that the ALJ failed to fully and fairly develop the record (by failing to order podiatry records); failed to give proper weight to the medical opinions of treating physicians (also related to his bilateral foot pain); and, *inter alia*, that "[t]he ALJ also failed to properly consider other evidence from all referred psychiatrist or psychologist in the past." *Pl.'s Mot.* (dkt. 12) at 2, 5-7.

The ALJ found that the record contained evidence that Plaintiff suffered from obstructive sleep apnea, obesity, knee tendonitis and right knee pain, osteophyte formation in the cervical spine, flat feet and foot arthritis, difficulties with vision, bipolar disorder without psychotic features, polysubstance abuse dependence, schizophrenia, antisocial personality disorder, and depression. *AR* (dkt. 11) at 14-15. However, the ALJ found all of these conditions to be non-severe with the exception of Plaintiff's flat feet and foot arthritis. *Id.* at 14.

Plaintiff, now 42 years old, has experienced a history of problems with handling

confrontation and provocation, as well as managing his reactions to everyday stress, frequently finding himself thwarted or frustrated, and resulting in problems with anger control. *Id.* at 390. As a young man, Plaintiff spent 6 years studying music and psychology at Rutgers University, however, no degree was conferred. *Id.* at 42-45. Later, Plaintiff joined the U.S. Navy in 2004, eventually attainting the rank of Petty Officer 2nd Class; however, because of a period of unauthorized absence due to family circumstances, Plaintiff was jailed and separated from the service through a bad conduct discharge. *Id.* at 45-46, 390. Since then, Plaintiff has suffered from the above-mentioned physical and psychological impairments while living in poverty, including occasions of homelessness. *Id.* at 40-41, 46-53.

*The Medical Evidence:*

In the course of seeking a disability finding as to his physical and psychological impairments, Plaintiff underwent psychiatric evaluations in 2011 and again in 2015. *Id.* at 390, 478. In March of 2011, Solomon Miskin, M.D., noted Plaintiff's reports of a "history of problems with anger dyscontrol . . . difficulties in managing being thwarted or frustrated . . . and significant problems in handling confrontation or provocation and becom[ing] angry in reaction to everyday stress." *Id.* at 390. Following a mental status examination and a review of Plaintiff's history, Dr. Miskin diagnosed Plaintiff with two Axis-I psychological disorders: bipolar disorder (chronic, mixed, without psychotic features) and polysubstance abuse and dependence; additionally, Dr. Miskin diagnosed Plaintiff as suffering from an Axis-II personality disorder with "impulsive and explosive traits." *Id.* at 392. Dr. Miskin's report noted that, at the time, Plaintiff was living at a homeless shelter where he was receiving some psychotherapy sessions. *Id.* at 390. Further, Dr. Miskin assessed Plaintiff with a Global Assessment of Functioning score of 55. *Id.*

Four years later, in March of 2015, Plaintiff underwent a psychiatric evaluation by Les Kalman, M.D., Psy.D. *Id.* at 478. After noting that Plaintiff arrived late to the examination, Dr. Kalman reported the chief complaint in Plaintiff's own words: "I'm always pissed off. I got pulled over by the police. Then they took it away. Cops have too much authority." *Id.* Dr. Kalman's description of the history of Plaintiff's present illness noted that the "Patient rambled on for several minutes with themes of anger, irritability, blaming society for his ills and complaining

3

about the system and how he's been wronged." *Id*. When discussing recent bouts of incarceration with Plaintiff, Dr. Kalman observed as follows: "Plaintiff would go off on rants yelling, complaining with significant paranoid themes evident throughout the interview. The more agitated he became, the more disorganized his speech became. He would ramble, stating 'electrocuting dog. I gotta get out of here. License suspended.'" *Id*. at 479. As part of the intellectual functioning portion of this mental status examination, Dr. Kalman noted that when Plaintiff was asked to interpret the proverb, "you can't judge a book by its cover," Plaintiff responded to the following effect: "this country shouldn't be prejudiced, but you still get shot. You shouldn't be controversial. You get a job with big tips whatever." *Id*. at 480. Dr. Kalman further described Plaintff's mental status, characterizing his judgment as poor, his mood as irritable, his affect as constricted, and, that "Patient was angry, annoyed." *Id*. Regarding Plaintiff's thought process, Dr. Kalman found Plaintiff's "form of thought was illogical, tangential and circumstantial . . . [marked by] loose associations and derailment with significant paranoid themes." *Id*. Quoting Plaintiff's statements during the exam – "This country they kill all over the world. They put sanctions on countries. They do things to you" – Dr. Kalman found that Plaintiff's thought content was likewise "[p]ositive for paranoid delusions," *Id*. As to social functioning, Dr. Kalman found that Plaintiff is estranged from family, has no friends, and spends his days trying to figure out how to provide for himself without going to jail. *Id*. In the end, Dr. Kalman diagnosed Plaintiff with paranoid schizophrenia and antisocial personality disorder and opined that Plaintiff would not be able to interact with supervisors and co-workers; deal with the public; understand, remember and carry out simple one and two-step job instructions; maintain attention, concentration and memory; or, withstand the stress and pressures associated with daily work activities. *Id*. at 480-481. Lastly, Dr. Kalman noted that Plaintiff's condition was not expected to improve significantly within the next 12 months. *Id*. at 481.

*The ALJ Hearing:*

At the hearing before the ALJ, Plaintiff's counsel opened by noting that "Mr. Abdul Ali suffers from both mental and physical issues, depression, anger on the mental side . . . [a]nd he'll explain their severity to you upon questioning." *Id*. at 36. The ALJ then proceeded to question

4

Plaintiff, mostly about his physical impairments. *See id.* at 39-49. After establishing Plaintiff's poverty and occasional homelessness, the ALJ did ask Plaintiff whether he was currently receiving any psychiatric treatment, or if he had received any in the past. *Id*. at 49. Confirming a past psychiatric examination, Plaintiff mentioned Dr. Kalman, at which point, noting that Dr. Kalman "says you're a bit angry," the ALJ asked Plaintiff himself, "[w]hy are you so angry?" *Id*. at 49-50. Plaintiff responded, "I - - I don't know what you call it, but how I - - my emotional reaction or my overall reaction to what I'm dealing with." *Id*. at 50. When asked by the ALJ if he gets along with his roommates, Plaintiff stated that he does not socialize with them; when asked if he gets along with teachers and other students at school, Plaintiff again stated that he doesn't socialize there either, but that "I just have one problem with one student last semester . . . [and] one student made a complaint about me, but that was just a disagreement basically." *Id*. The ALJ also asked Plaintiff, "[b]esides being angry, are you sad?" *Id*. at 53. Plaintiff responded in the affirmative and explained that "I'm pretty much alone and don't have any help, so it's just, you know, I go through the mixture of different emotions . . . dealing with the anger, being confrontational to authority figures . . . every situation I've been in, including the Navy, and just not having a solution myself, so just trying to see what the doctors can do for me." *Id*.

The ALJ then asked the Vocation Expert ("VE") a series of hypothetical questions, all but one of which were focused entirely on Plaintiff's physical impairments. *See id*. at 53-60. First, the ALJ had the VE state the equivalents to Plaintiff's past work in the Navy and the VE identified the job descriptions of IT technician and substitute teacher. *Id*. at 57. The ALJ's first hypothetical asked the VE whether someone with Plaintiff's education who is limited to medium work, simple routine tasks, simple work related decisions and few changes in the work setting could perform the job of network administrator or substitute teacher – the VE answered in the negative. *Id*. at 57-58. When asked whether such an individual could perform any other work, the VE suggested employment as a machine heater, a vehicle cleaner, or a laundry worker. *Id*. at 58. The ALJ then asked the VE to assume the same hypothetical, but with the individual being limited to light work; the VE suggested housekeeping cleaner, laundry press operator, and small products assembler. *Id*. at 59. The ALJ also asked the VE to assume the same hypothetical again, but this time limiting the

5

individual to sedentary work; the VE suggested document preparer, addresser, and stuffer. Lastly, the ALJ asked the VE, "if the hypothetical individual was unable to sustain an appropriate relationship with supervisors, would there be any work?" *Id*. at 60. The VE responded that there would not be any work for such a person in the national economy. *Id*. At this point, when asked by the ALJ whether there was anything else, Plaintiff's counsel added that "[y]es, we are, we are saying that his anger is going to interfere with any attempt at substantial gainful activity, so that is that." *Id*. at 61.

*The ALJ's Decision:*

The ALJ found that Plaintiff's flat feet and osteoarthritis of the feet were severe impairments because they cause "more than a minimal effect on claimant's ability to function." *Id*. at 14 (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). However, the ALJ found Plaintiff's bipolar disorder, polysubstance abuse, schizophrenia, antisocial personality disorder, and depression "considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and therefore are nonsevere." *AR* (dkt. 11) at 15. The ALJ explained that conclusion by noting that Plaintiff "has not had any significant, ongoing psychiatric treatment . . . [has] never been hospitalized for mental health reasons . . . has not consistently taken any psychotropic medications . . . [and that] his impairment does not appear to cause work limitations on a consistent basis for 12 consecutive months." *Id*. Incidentally, it is unclear if the use of the word "impairment" (singular) is a typographic error, or if the ALJ was referring only to one or another of Plaintiff's five mental impairments.

Noting that Dr. Miskin diagnosed Plaintiff with bipolar disorder and polysubstance abuse, the ALJ only gave Dr. Miskin's opinion "partial weight," explaining only that the "report consists of only a one-time examination," and that Plaintiff "has had mostly normal mental status examinations." *Id*. at 15, 16-17. As to Dr. Kalman's opinion that Plaintiff is unable to interact with others, carry out simple instructions, maintain attention, and deal with stress, the ALJ afforded "little weight to this opinion." *Id*. at 17. By way of explanation, the ALJ noted that "[t]he claimant did not exhibit any inability to follow along and answer questions at the hearing . . . [and that] the opinion is inconsistent with the examiner's own findings, which indicate that the claimant was

6

cooperative, could perform calculations, and had average intelligence." *Id*. The ALJ added that Dr. Kalman's opinion was somehow invalid because at the time of the examination, Plaintiff "was not on any medications and was not receiving any significant mental health treatment," and because the opinion was inconsistent with Plaintiff's statement that he "is able to play chess, play music, socialize with others, go grocery shopping alone, and go to school full-time." *Id.* Lastly, the ALJ concluded by stating that in any event, "finding that the claimant's mental impairments are non-severe is not outcome determinative as there are a number of unskilled simple, and repetitive jobs that the claimant can perform." *Id*.

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[1] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. *AR* (dkt. 11) at 12-23. At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *AR* (dkt. 11) at 13-14.

At Step Two, the claimant bears the burden of showing that he has a medically severe

---

[1] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will generally cite to the SSI regulations herein unless noted otherwise.

7

impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: bilateral pes planus (flat feet) and osteoarthritis of the feet. *AR* (dkt. 11) at 14.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. *AR* (dkt. 11) at 18. Next, the ALJ determined that Plaintiff retained the RFC "to perform the full range of light work." *AR* (dkt. 11) at 18-21.

At Step Four, the ALJ determined that Plaintiff is capable of performing the equivalent of his past relevant work as an IT technician or a substitute teacher; or, in the alternative, Plaintiff could work as a housekeeping cleaner, laundry press operator, or small products assembler. *AR* (dkt. 11) at 21-23. Lastly, at Step Five, the ALJ concluded that based on the RFC for the full range of light work, that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 2, 2007, through the date of the issuance of the ALJ's decision, April 18, 2017. *AR* (dkt. 11) at 23.

**ISSUESS PRESENTED**

Plaintiff presents four issues for review, claiming that the ALJ failed to fully and fairly develop the record (by failing to order podiatry records); failed to give proper weight to the medical opinions of treating physicians (also related to his feet); that "[t]he ALJ also failed to properly consider other evidence from all referred psychiatrist or psychologist in the past"; and, that the RFC was not supported by substantial evidence. *Pl.'s Mot.* (dkt. 12) at 2, 5-8.

//

**DISCUSSION**

The court will note at the outset that Plaintiff, a non-lawyer, is proceeding *pro se*, accordingly, the court will construe his arguments liberally.[2] However, in this case a great deal of liberal construction is not required to interpret Plaintiff's claim to the effect that the ALJ did not properly consider the psychiatric and psychological evidence (which Plaintiff has plainly stated), and therefore made an incorrect Step-II determination as to Plaintiff's mental impairments, which then infected the remainder of the sequential evaluation process (which is the logical conclusion of Plaintiff's stated issue). In this regard, the court will begin with noting that while it is true that it is incumbent on claimants to provide sufficient medical evidence of one or more disabling impairments, it has "long [been] recognized that the ALJ is not a mere umpire at [an administrative proceeding], but has an independent duty to fully develop the record[.]" *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992, as amended Sept. 17, 1992) (*per curiam*); *see also Sims v. Apfel*, 530 U.S. 103, 110-11 ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]").

As part of this duty, the ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence, particularly evidence from treating physicians, are addressed so that the disability determination is fairly made on a sufficient record of information, be it favorable or unfavorable to the claimant. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999); and, *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978); *see also* 42 U.S.C. § 421(h). The ALJ has not only the power, but the duty, to "conduct an appropriate inquiry" if the evidence is

---

[2] Court must construe *pro se* pleadings liberally and "interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)); *see also Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003) ("[c]ourts have a duty to construe *pro se* pleadings liberally, including *pro se* motions"); *Vaughn v. Berryhill*, No. 2:16-CV-02425 (VEB), 2017 U.S. Dist. LEXIS 51575, at *8 (C.D. Cal. Apr. 3, 2017) (*pro se* litigant's pleadings in social security cases are construed more liberally than pleadings prepared by counsel); and, *Swart v. Berryhill*, No. 16-CV-05383-LHK, 2017 U.S. Dist. LEXIS 176133, at *6 (N.D. Cal. Oct. 24, 2017) (same) (citing *Bernhardt*, 339 F.3d at 925).

9

ambiguous or inadequate to permit a proper evaluation of a claimant's impairments. *Smolen*, 80 F.3d at 1288. If evidence from a medical source is inadequate to determine if the claimant is disabled, an ALJ may be required to re-contact the medical source, including a treating physician, to determine if additional needed information is readily available. *See* 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1); *see also Webb*, 433 F.3d at 687 ("[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence [or] the ALJ's own finding that the record is inadequate"). The responsibility to fulfill this duty belongs entirely to the ALJ; it is not part of the claimant's burden. *See e.g., White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("This duty extends to the represented as well as to the unrepresented claimant . . . The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry . . . including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.").

Here, it can not be reasonably said that the ALJ discharged the "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. 103, 110-11. Under circumstances presented by the findings and diagnoses of medical professionals including Dr. Miskin and Dr. Kalman (paranoid schizophrenia, chronic bipolar disorder, polysubstance abuse, antisocial personality disorder with impulsive and explosive traits, and depression), the ALJ cannot be said to have fully and fairly developed the record in a manner that protects Plaintiff's interests by merely asking, "why are you so angry?" or "are you sad?"

Viewing the facts of this case in light of *Tonapetyan*, and notwithstanding Defendant's contention that the ALJ adequately explained why Plaintiff's mental impairments were non-severe (*see Def.'s Mot.* (dkt. 15) at 4) the court finds that the ALJ had a duty to develop the record and erred by not doing so. Because both the record and Plaintiff's testimony demonstrated the existence of a series of mental impairments, the ALJ's duty to develop the record was

10

"heightened." *See Tonapetyan*, 242 F.3d at 1150; *see also Plummer v. Apfel*, 186 F.3d 422, 434 (3d Cir. 1999) (when there is a suggestion of mental impairment, an ALJ must inquire into the current status of that impairment and its possible effect on a claimant's ability to work); *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (a claimant only needs to raise suspicion about a mental impairment to trigger the duty to develop the record); *Hilliard v. Barnhart*, 442 F. Supp. 2d 813, 817 (N.D. Cal. 2006) (same)).

Here, Dr. Miskin diagnosed Plaintiff with two Axis-I psychological disorders (chronic bipolar disorder and polysubstance abuse and dependence) combined with an Axis-II personality disorder with "impulsive and explosive traits." However, the ALJ appears to have rejected these diagnoses in finding the conditions to be non-severe. Additionally, Dr. Kalman diagnosed Plaintiff with paranoid schizophrenia and antisocial personality disorder and opined that Plaintiff would not be able to interact with supervisors and co-workers; deal with the public; understand, remember and carry out simple one and two-step job instructions; maintain attention, concentration and memory; or, withstand the stress and pressures associated with daily work activities. Likewise, the ALJ found these impairments non-severe, while also rejecting Dr. Kalman's opinions as to their work-related limitations.

As to Dr. Miskin's diagnoses, the ALJ reasoned that the "report consists of only a one-time examination," and that Plaintiff otherwise "has had mostly normal mental status examinations." The court finds that this is not the sort of specific and legitimate reason for which the opinion or diagnosis of an examining physician may be rejected. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) ("And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."). This is especially true in light of the fact that the ALJ also erred by merely asking Plaintiff why he was angry, whether he was sad, and whether he got along with his roommates and classmates. In light of the record before the court, which reflects Plaintiff's long history with mental illness, the ALJ should have, at a minimum, asked more pointed questions to establish the parameters within which Plaintiff is able to interact with those around him, or to contact Dr. Miskin to inquire further about his findings and opinions.

Likewise, as to Dr. Kalman's opinions, the ALJ erred in rejecting the opinions of an examining physician and basing that rejection on the notion that Plaintiff seemed okay at the hearing, or that Plaintiff was "cooperative" during Dr. Kalman's examination, or that he was found to have average intelligence, perform simple calculations, play chess, socialize with others, go grocery shopping alone, and attend school. On this basis, the ALJ found that Plaintiff's mental impairments do not disqualify him from performing simple, unskilled, repetitive jobs. Once again, the court finds that this reasoning falls short of the standard described above due to logical disconnects. For example, being cooperative during Dr. Kalman's examination, or compliant at the hearing before the ALJ, does not diminish Dr. Kalman's diagnosis of paranoid schizophrenia or antisocial personality disorder. Further, the ability to engage in certain aspects of everyday life, such as playing chess or playing music, grocery shopping alone, socializing, or attending school do not, by themselves, diminish Dr. Kalman's opinions regarding Plaintiff's work-related limitations. A plaintiff's daily activities can constitute a specific and legitimate reason to reject a medical opinion only where the daily activities are inconsistent with that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Once again, in light of the record of Plaintiff's history of mental illness, the ALJ should have, at a minimum, asked more pointed questions to establish the parameters within which Plaintiff is able to interact with those around him <u>*in the workplace setting*</u>, or to contact Dr. Kalman to inquire further about his findings and opinions.

In light of the above, because the court finds that further administrative proceedings would serve a useful purpose, the court orders this matter remanded for further development of the record and for a reengagement of the sequential evaluation process from Step-II forward. *Garrison*, 759 F.3d at 1020 (before remanding for an award of benefits, the Court must find "the record has been fully developed and further administrative proceedings would serve no useful purpose.").

Plaintiff has also argued that the ALJ erred in failing to develop the record as to certain podiatry records, failed to give proper weight to certain treating podiatric physicians' opinions, and erred in formulating the RFC. *Pl.'s Mot.* (dkt. 12) at 3-8. However, because the court is already remanding the case for further proceedings, the court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we

remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (dkt. 12) is **GRANTED**, and Defendant's Motion for Summary Judgment (dkt. 15) is **DENIED**. The case is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: August 15, 2019

ROBERT M. ILLMAN
United States Magistrate Judge